UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RONALD S. MATHEWS,

                         Plaintiff,

   -v-                                      5:08-CV-118

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

OLINSKY & SHURTLIFF               HOWARD D. OLINSKY, ESQ.
Attorneys for Plaintiff
300 S. State Street, Suite 520
Syracuse, NY 13202

OFFICE OF REGIONAL GENERAL COUNSEL   SUSAN J. REISS, ESQ.
SOCIAL SECURITY ADMINISTRATION REGION II
Attorneys for Defendant
26 Federal Plaza Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      This matter is brought pursuant to §§ 205(g) & 1631(b)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) & 1383(c)(3), to review a final determination of the Commissioner of Social Security denying the plaintiff's claim for Social Security Disability benefits and Supplemental Security Income. The parties have filed their briefs, including the Administrative Record on Appeal, and the matter has been submitted for decision without oral argument.

## II. BACKGROUND

Plaintiff Ronald S. Mathews ("plaintiff" or "Mathews") filed an application for social security disability benefits and supplemental security income on January 29, 2005, claiming a period of disability beginning on January 1, 2002.  His claims were initially denied and he timely filed a request for a hearing.  A hearing was held before an Administrative Law Judge ("ALJ") on November 28, 2006.  The ALJ rendered a decision on January 31, 2007, denying plaintiff's claim.  Plaintiff appealed the ALJ's decision.  On December 4, 2007, the Appeals Council declined further review of the ALJ's decision.  Thus, the ALJ's decision became the final decision of the Commissioner.

## III. DISCUSSION

### A. Standard of Review

The scope of a court's review of the Commissioner's final decision is limited to determinating whether the decision is supported by substantial evidence and the correct legal standards were applied.  Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam) (citing Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002); Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)).  "Substantial evidence means 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Poupore, 566 F.3d at 305 (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing

Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S. Ct. 456, 464 (1951)).  If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  Id.

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone, 70 F. Supp. 2d at 148 (citing Johnson, 817 F.2d at 986).

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Martone, 70 F. Supp. 2d at 148.  "Remand is appropriate where there are gaps in the record or further development of the evidence is needed," such as where new, material evidence has become available.  42 U.S.C. § 405(g); Martone, 70 F. Supp. 2d at 148 (citing Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980)).  A remand for rehearing directing the taking of additional evidence is warranted only if it is shown that there is new, material evidence "'and that there is good cause for the failure to incorporate such evidence into the record'" at the administrative hearing.  Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 643-44 (2d Cir. 1983) (quoting 42 U.S.C. § 405(g), as amended in 1980)).  Remand may also be appropriate if the Commissioner "misapplies the law or failed to provide a fair hearing."  Id. at 644.  However, where the underlying administrative decision is not supported by substantial evidence, reversal is appropriate because there would be no useful purpose in remanding the matter for further proceedings. Id. (reversing and remanding solely for calculation of benefits, subject to determination by the district court of any motion by the agency to remand to consider new evidence); Parker, 626

F.2d at 235 (reversing and remanding solely for calculation and payment of benefits); Simmons v. United States R.R. Ret. Bd., 982 F.2d 49, 57 (2d Cir. 1992) (same); Williams, 859 F.2d at 261 (same).

## B. Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The Administrative Law Judge ("ALJ") must follow a five step evaluative process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. In the first step the ALJ must determine whether the claimant is engaging in substantial gainful activity. If the claimant is engaging in substantial gainful activity he is not disabled and he is not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged is substantial gainful employment, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from a

severe impairment, then step three requires that the ALJ determine whether the impairment meets or equals an impairment listed in Appendix 1 of the regulations. Id. §§ 404.1520(d), 416.920(d); see also id. Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).

If the opinion of a treating physician is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record'" it is given significant weight.  Poupore, 566 F.3d at 307 (quoting 20 C.F.R. § 404.1527(d)(2)).  However, where the treating physician's opinion is not supported by medical evidence, it is not entitled to significant weight.  Id.

The burden of proof with regard to the first four steps is on the claimant.  Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Ferraris, 728 F.2d at 584.

If it is determined that claimant cannot perform past relevant work, the burden shifts to the agency for the fifth and  final step.  Perez, 77 F.3d at 46.  This step requires the agency to examine whether the claimant can do any type of work.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The regulations provide that "factors such as a claimant's age, education, and previous work experience" should be evaluated to determine whether a claimant has the residual functional capacity to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary."  Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).  "[T]he Commissioner need only show that there is work in the national economy

that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306.

A claimant may seek review of an adverse decision by the ALJ from the Appeals Council. Perez, 77 F.3d at 44. If review is granted, the decision of the Appeals Council is the final decision of the Commissioner. Id. If review is denied, then the final decision is that of the ALJ. Id. The final decision is judicially reviewable pursuant to 42 U.S.C. § 405(g).

### C. Analysis

The ALJ first determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Next the ALJ found that Mathews had the severe combination of impairments beginning February 11, 2004: moderate hearing loss (doing well with hearing aids), moderate Chronic Obstructive Pulmonary Disease/Asthma (responsive to broncho dilation), ligament and meniscal tears and degenerative changes in the right knee (surgery May 11, 2006), and ethanol abuse (ceased on December 31, 2004). However, due to the dearth of medical evidence from the alleged onset date to February 11, 2004, the ALJ found plaintiff had no severe impairment or combination of impairments prior to February 11, 2004. At step three the ALJ determined that Mathews' impairment or combination of impairments that meets or medically equals a listed impairment. Next the ALJ found that plaintiff had the RFC to occasionally lift/carry 20 pounds with the left upper extremity and only 10 pounds with the right upper extremity, stand and/or walk at least 2 hours and sit about six hours in an 8-hour workday, he could not kneel or crawl on his right knee, and he must avoid respiratory irritants.

The ALJ then found that Mathews was unable to perform any past relevant work. Based upon his age, education, work experience, and RFC, the ALJ determined that jobs

existed in significant numbers in the national economy that plaintiff can perform. Accordingly, the ALJ determined that Mathews was not disabled.

Plaintiff contends that the ALJ did not meet his obligation to fully develop the record, he applied that incorrect legal standards in assessing RFC, and he erred in directly applying the Medical-Vocations Rules.

### 1. Development of the Record

Plaintiff argues that the gap in medical evidence prior to February 11, 2004, as well as lack of post-surgery progress notes that lack of functional assessment, demonstrate that the ALJ failed to develop the record as is required. See Perez, 77 F.3d at 47.

According to Mathews' application for benefits, he had first seen his audiologist in November 2004. R. 60. Thus, there would be no records regarding plaintiff's hearing loss prior to that time.

He listed University Orthopedics as his medical source for his knee problems, but left blank the date of his first visit. Id. Therefore, it cannot be determined when he first treated with University Orthopedics. The record contains progress notes from March 21, 2005, through June 21, 2006. Id. at 150-72. There is no indication that records from University Orthopedics existed for treatment of plaintiff prior to March 21, 2005.

Mathews noted that he had been to Crouse Hospital on January 21, 2005, for a stress test. Id. at 61. His application shows that he did not have another appointment. Thus, there would be no other records from Crouse Hospital for the ALJ to obtain.

He indicated that he went to Syracuse Community Health Center for general check-ups and medication. Id. He did not fill in the space for dates of first visit or last visit. Progress notes for February 4, 2004, to October 15, 2004, were submitted by plaintiff's non-

attorney representative on December 11, 2006, after the hearing. Id. at 110. The initial note indicates that this was Mathews' first visit. Thus, the record from this provider could not have been developed by the ALJ for the time period prior to February 4, 2004. Additionally, the initial progress note indicates that plaintiff stated that his knee pain resulted from a prior injury but that he did not follow up about treatment due to insurance issues, indicating that there may not be previous medical records.

The fourth medical source plaintiff set forth was Upstate Medical University, for acid reflux and Hepatitis C treatments. Id. at 62. Again, he did not set forth any dates. Mathews initially had a liver biopsy in February 2005, and the progress notes indicate that he completed a 48-week course of treatment for Hepatitis C and was doing well. Id. at 153-58, 161-65. He reported that acid reflux was well controlled with medication. Id. at 165. Again, there is no indication that plaintiff treated with this medical source prior to the progress notes in the record.

Finally, at the hearing the ALJ discussed with Mathews' non-attorney representative obtaining additional medical records. Id. at 199-201. She indicated that she had requested additional documentation from University Hospital. Id. at 199. The ALJ specifically requested notes from the knee surgery, the admitting physical, any consultative physicals, imaging reports, x-rays, MRIs, and surgery follow up visits. Id. at 200. The representative stated that there were no other outstanding medical records. Id. at 201. On December 11, 2006, plaintiff's representative submitted additional records, including operative notes and follow up notes the ALJ requested at the hearing. Id. at 105. The ALJ made every reasonable effort to fully and fairly develop the record. See Perez, 77 F.3d at 47.

### 2. **Legal Standard in Assessing RFC**

Plaintiff takes issue with the ALJ's stating: "The comment by Dr. Ratcliff that the claimant could not do construction work and needed a sedentary job (Exhibit 10F, page 3) is given substantial weight as related to the claimant's knee. This assessment is the prime rationale for the claimant's residual functional capacity that I have found." R. at 25-26. According to Mathews, reliance upon Dr. Ratcliff's opinion was misplaced because she did not provide a functional assessment. He further contends that the absence of any medical opinion regarding functional limitations precluded the ALJ's finding as to plaintiff's RFC.

The ALJ stated that he considered all symptoms to the extent consistent with objective medical evidence as well as other evidence as required by the regulations. He noted the limitations opined by the Department of Social Services both pre- and post-knee surgery, a consultative orthopedist, the RFC assessment prepared by the Social Security Administration, and plaintiff's own testimony. Id. at 26-28. The ALJ stated that he gave little weight to unacceptable medical or non-medical sources. He gave limited weight to the post-surgery assessment because it was limited to the post-surgery period of less than 12 months.

At the hearing Mathews testified that he was able to dress and bathe himself and cook. Id. at 226. He stated that his wife does all the cleaning, laundry, and grocery shopping, but did not say that he was not capable of doing those things. Id. He testified that he would have to stand a couple of times to make it through a two-hour movie, and it would be difficult for him to make it through an eight hour work day. Id. at 227. The ALJ found this less than credible because he did not take prescribed medication for pain, indicating that his pain was manageable. Id. at 27. Mathews also testified that he could lift 20 to 30 pounds

with either the right or left side, but could not walk with it unless he held it on his left side. Id. at 229. This is not inconsistent with the ALJ's RFC finding.

Thus, the ALJ's finding as to plaintiff's RFC is supported by substantial evidence. Although the ALJ stated that he gave substantial weight to Dr. Ratcliff's comment that Mathews could no longer do construction work and needed a sedentary job, it is clear from his decision and the other stated bases for his findings that he followed the proper legal standard. That is, he considered all the evidence in the record, assessing credibility as appropriate, to determine plaintiff's RFC. He did not accept Dr. Ratcliff's comments regarding construction work and sedentary job as a functional assessment.

Although plaintiff argues that the ALJ should have obtained a functional assessment, his representative at the hearing told the ALJ that she has requested a physical RFC from University Hospital, and had followed up to no avail. Id. at 199. Thus, it appears that no functional assessment was available.

### 3. Application of Medical-Vocational Rules

Mathews argues that because he had a nonexertional limitation, it was improper for the ALJ to apply the Medical-Vocational Rules to direct a finding of not disabled. However, the ALJ did not use the Medical-Vocational Rules to direct a finding. Rather, he used them as a framework for making a determination. Id. at 28. Moreover, the medical records show that plaintiff's asthma is well controlled with medication, requiring only that he avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. This restriction would have minimal impact upon the work he could perform. SSR 85-15, 1985 WL 56857 at *8 (S.S.A. 1985). Thus, it was proper for the ALJ to use the Medical-Vocational Rules as a framework for his determination that plaintiff was not disabled.

## IV. CONCLUSION

The ALJ met his obligation to fully develop the record. In addition, he applied the appropriate legal standards in assessing Mathews' RFC and following the Medical-Vocational Rules as a framework for making a finding of not disabled.

Accordingly, it is

ORDERED that

1. The Commissioner's motion for judgment on the pleadings is GRANTED;

2. The Commissioner's decision denying plaintiff disability benefits is AFFIRMED; and

3. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.

_____
United States District Judge

Dated: October 29, 2010
       Utica, New York.